# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 91

APRIL TERM, A.D. 2026

August 11, 2026

PAUL SORUM,

Appellant
(Defendant),

v.

MIKE SIKORSKI, and BIG SKY LIMITED
OF WYOMING, a Wyoming corporation,

Appellee
(Plaintiff).

S-26-0035

*Appeal from the District Court of Campbell County*
*The Honorable James Michael Causey, Judge*

*Representing Appellant:*
Paul J. Sorum, pro se.

*Representing Appellee:*
Drake D. Hill, Hill Law Firm, LLC, Cheyenne, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL, Justice.**

[¶1]    Paul Sorum and Mike Sikorski have been litigating contract claims between them for a number of years.  At a trial of the matter, the district court did not allow Mr. Sorum to testify regarding an alleged oral guarantee he made.  In *Sorum v. Sikorski*, 2024 WY 124, 559 P.3d 153 (Wyo. 2024) (*Sorum I*), we remanded the matter to the district court for the limited purpose of allowing Mr. Sorum to testify regarding the claim he breached a personal oral guarantee.  After the limited remand hearing, the district court found Mr. Sorum made a personal oral guarantee to Mr. Sikorski and failed to uphold it.  The district court, therefore, reaffirmed its previous judgment assessing damages and pre-judgment interest of $114,537.56 against Mr. Sorum.  We affirm.

## ISSUES

[¶2]    Mr. Sorum lists six issues for review and raises additional issues under other sections of his opening brief and reply brief.[1]  After reviewing the record, we find many of the issues are beyond the scope of the limited remand, were already considered and decided in *Sorum I*, or could have been raised below but were not and are now waived.[2]  *See Sorum I*, ¶ 2, 559 P.3d at 157.  Other issues are not supported by cogent argument on appeal, and we will not address them.  *Id.* at 157 (citing *McInerney v. Kramer*, 2023 WY 108, ¶ 9, 537 P.3d 1146, 1148 (Wyo. 2023) (explaining when a brief or an issue in that brief is not supported by cogent argument or pertinent legal authority,  we refuse to consider the issue, whether the brief is by a pro se litigant or filed by counsel)).  Accordingly, we consolidate and rephrase the issues raised and supported by cogent argument on appeal by Mr. Sorum as follows:

   I.    Did the district err when it limited the scope of testimony and evidence it would allow?

   II.   Did the district court clearly err when it concluded Mr. Sorum made an oral guarantee to pay leases with personal funds?

## FACTS

---

[1] In *Sorum I*, we declined to consider Mr. Sorum's issues on damages because they were not yet ripe for review, given our remand.  *Sorum I*, ¶ 48, 559 P.3d 153, 168.  We note Mr. Sorum did not raise as an issue, nor cogently challenge, the district court's damage award to Mr. Sikorski on appeal after remand.

[2] For instance, Mr. Sorum, misunderstanding personal jurisdiction, claims the district court did not have personal jurisdiction over him.  The personal jurisdiction claim is waived because it was not raised at the earliest opportunity.  *See Hopeful v. Etchepare, L.L.C.*, 2023 WY 33A, ¶ 28, 528 P.3d 414, 423 (Wyo. 2023) (citing *Pilcher v. Elliott*, 2020 WY 130, ¶ 16, 473 P.3d 1251, 1255 (Wyo. 2020); *Cotton v. Brow*, 903 P.2d 530, 531 (Wyo. 1995)).  In his answer, Mr. Sorum admitted to being served the complaint and summons and voluntarily appeared, and he did not object to personal jurisdiction in his Answer, in his two motions to dismiss, in his motion for a directed verdict, and in his two motions for summary judgment, covering a period of over two years.

1

[¶3]   We will summarize only the history and facts relevant to the matter at hand—the district court's conclusion that Mr. Sorum owed damages to Mr. Sikorski based upon his breach of a personal oral guarantee.  The basic facts were set forth in detail in *Sorum I*, 2024 WY 124, 559 P.3d 153 (Wyo. 2024).

[¶4]   Mr. Sorum and Jeff Martinson each owned 50% of Clean Crude, an oil processing company.  *Sorum I*, ¶ 3, 559 P.3d at 158.  Mr. Sorum and Mr. Martinson approached Mr. Sikorski of Big Sky Limited of Wyoming (Big Sky) and inquired about leasing above-ground oil storage tanks from Big Sky.  *Id.*  On June 8, 2016, Big Sky and Clean Crude entered into a written lease agreement for nine storage tanks.  *Id.*  On June 16, Big Sky and Clean Crude entered into a second written lease agreement for five additional tanks.  *Id.* In 2017, Big Sky filed a lawsuit against Clean Crude alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unjust enrichment.  *Id.*, 559 P.3d at 158–159.  Shortly after the initial filing, Big Sky amended its complaint, adding Mr. Sorum and Mr. Martinson as defendants.  *Id.*  Big Sky alleged that the defendants did not make payments under the leases and left the tanks in poor condition, requiring Big Sky to incur costs to restore them to a usable condition.  *Id.*

[¶5]   Mr. Martinson settled with Big Sky and agreed to pay it $100,000.  *Id.*, ¶ 4, 559 P.3d at 159.  In 2022, Mr. Sikorski, who had transferred his interest in Big Sky to others, was substituted as plaintiff for Big Sky in this case.  *Id.*

[¶6]   A bench trial was held in March 2023.  *Id.*, ¶ 5, 559 P.3d at 159.  During the trial, Mr. Sikorski testified that Big Sky received a down payment from Clean Crude in June 2016, but received no subsequent lease payments.  *Id.*, ¶ 6, 559 P.3d at 159.  Mr. Sikorski testified Big Sky incurred costs to clean and remove the tanks from the premises where Clean Crude had operated and provided information on those costs.  *Id.*

[¶7]   Mr. Sikorski also testified that he met with Mr. Sorum and Mr. Martinson in August 2016.  *Id.*, ¶ 7, 559 P.3d at 159.  At this meeting, Mr. Sorum and Mr. Martinson asked him to store some of their specialized equipment in his shop.  *Id.*  Mr. Sikorski agreed to the request and then raised his concerns over Clean Crude's lack of payments under the leases. *Id.*  He testified, "[Mr. Sorum and Mr. Martinson] assured me that I had nothing to worry about, both . . . Mr. Sorum and Mr. Martinson said, . . . if we have to pay you personally, we'll make sure you get paid."  *Id.*  Mr. Sorum objected to this testimony, arguing that it was "just hearsay" and that the allegations in the Amended Complaint confined missed payments to November and December.  *Id.*  The district court allowed the testimony and noted that the pleadings would be amended to conform to the evidence under W.R.C.P. 15(b).  *Id.*

[¶8]   Mr. Sorum informed the district court that he would like to call himself as a witness. *Id.*, ¶¶ 24–25, 559 P.3d at 162–63.  Mr. Sikorski objected to Mr. Sorum's request because

he had not listed himself as a witness in his pretrial memorandum. *Id*., ¶ 25, 559 P.3d at 163. The district court sustained Mr. Sikorski's objection and denied Mr. Sorum's request to testify. *Id*. Mr. Sorum presented no witnesses and no evidence at the trial.

[¶9] At the conclusion of the bench trial, the court ruled Clean Crude had breached the written lease agreements but found Mr. Sikorski had failed to make a sufficient showing to pierce the corporate veil and, therefore, Mr. Sorum could not be personally liable under the written leases. *Id.*, ¶ 8, 559 P.3d at 159. However, it held that Mr. Sorum was personally liable for damages, based on his oral guarantee. *Id.* It found:

> Defendant Sorum and Mr. Martinson sought to assure Big Sky and Mr. Sikorski of payment in August 2016, with Mr. Martinson and Defendant Sorum stating to Mr. Sikorski that Big Sky and Mr. Sikorski would be paid even if Mr. Martinson and Defendant Sorum had to pay with personal funds. Defendant Sorum did not conduct cross-examination on this topic, and the record stands uncontradicted on this promise.

*Id.* The district court concluded:

> This oral promise was definite in its terms as it referred to equipment and services known to the parties and already in place, and it related to charges that were well known to the parties that had been and continued to be incurred. Defendant Sorum and Mr. Martinson supplied guarantee of payment terms to known contract terms. That is, Defendant Sorum and Mr. Martinson would pay with their personal funds for the equipment being rented if funds were not available from Clean Crude.

*Id.*

[¶10] The district court entered judgment in favor of Mr. Sikorski. *Id.*, ¶ 9, 559 P.3d at 159. It found damages in the amount of $177,923.97, which included amounts due under the leases and costs for cleaning the tanks. *Id.* The court subtracted $100,000 from this amount to account for Mr. Martinson's settlement leaving net damages of $77,923.97. *Id.* It awarded pre-judgment interest of $36,613.59 for a total judgment of $114,537.56. *Id.*, 559 P.3d at 159-60. The court ordered Clean Crude and Mr. Sorum to be jointly and severally liable to Mr. Sikorski for the amounts awarded. *Id.*

[¶11] In *Sorum I*, we reversed the district court's refusal to allow Mr. Sorum to testify regarding the oral guarantee. *Id.*, ¶¶ 1, 30, 48, 559 P.3d at 157, 164, 168. In so ruling, we noted that the question of Mr. Sorum's liability based on the oral guarantee was separate from his liability as a member of Clean Crude. *Id.*, ¶ 31, 559 P.3d at 164. Affirming in part and reversing in part, we remanded for the limited purpose of allowing Mr. Sorum to testify regarding the personal oral guarantee. *Id.*, ¶¶ 1, 48, 559 P.3d at 157, 168. We

3

declined to consider Mr. Sorum's issues on damages as they were not yet ripe for review given our limited remand. *Id.*, ¶ 48, 559 P.3d at 168.

[¶12]   On remand, the district court held a limited remand hearing wherein Mr. Sorum, again appearing pro se, put himself on the stand and testified as to the alleged personal oral guarantee.   Prior to the remand hearing, Sorum indicated he would submit numerous exhibits.   The district court ruled only those relevant to the oral guarantee would be allowed.   Mr. Sorum did not present or offer any additional evidence other than his testimony at the hearing.   Mr. Sikorski did not put on any evidence but instead informed the district court that he was relying on his testimony and evidence from the bench trial, as well as the district court's decision and review of the damages testimony and damages evidence.   Mr. Sikorski also cross-examined Mr. Sorum.

[¶13]   After the limited remand hearing, the district court issued its order.   In making its ruling, it reviewed and considered the evidence and argument presented both during the original proceedings and the limited remand proceedings, incorporating by reference all the various factual findings it had previously made.   It found for Mr. Sikorski on his claim that Mr. Sorum breached his personal guarantee to pay him with personal funds if funds were not available from Clean Crude, LLC.   The district court reaffirmed its previous judgment assessing damages and pre-judgment interest of $114,537.56 against Mr. Sorum personally.   Mr. Sorum, continuing to appear pro se, timely appealed.

## STANDARD OF REVIEW

[¶14]   We review the district court's ruling after a bench trial under the following standard:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict.   While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record.   Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence.   Findings of fact will not be set aside unless they are clearly erroneous.   A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
>
> Findings may not be set aside because we would have reached a different result.   Further,

4

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Sorum I*, ¶ 10, 559 P.3d at 160 (quoting *Strong Constr., Inc. v. City of Torrington*, 2011 WY 82, ¶¶ 8–9, 255 P.3d 903, 907 (Wyo. 2011)) (internal citations omitted and citation modified).

[¶15] "We review evidentiary rulings for abuse of discretion." *Sorum I*, ¶ 11, 559 P.3d at 160 (quoting *Lyman v. Childs*, 2023 WY 16, ¶ 50, 524 P.3d 744, 759 (Wyo. 2023)). "We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion." *Sorum I*, ¶ 11, 559 P.3d at 160 (quoting *Lyman*, ¶ 50, 524 P.3d at 759). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Williams v. Gage*, 2026 WY 30, ¶ 10, 585 P.3d 183, 187 (Wyo. 2026) (quoting *Hale v. City of Laramie*, 2025 WY 133, ¶ 19, 580 P.3d 516, 520 (Wyo. 2025)). "A court abuses its discretion if it acts 'in a manner which exceeds the bounds of reason under the circumstances.'" *Id.* The question for this Court to determine on appeal is "whether the trial court could reasonably conclude as it did." *Hutton v. Dykes*, 2025 WY 94, ¶ 16, 575 P.3d 334, 341 (Wyo. 2025) (quoting *Holloway v. Hidden Creek Outfitters, LLC*, 2025 WY 59, ¶ 30, 569 P.3d 756, 763 (Wyo. 2025)). The appellant bears the burden of demonstrating the district court abused its discretion. *Robinson v. Black*, 2025 WY 25, ¶ 6, 564 P.3d 1030, 1033 (Wyo. 2025); *Lackey v. Lackey*, 2022 WY 22, ¶ 32, 503 P.3d 92, 98–99 (Wyo. 2022).

[¶16] "To the extent that this appeal raises questions of law, those questions are reviewed de novo." *Sorum I*, ¶ 11, 559 P.3d at 160 (quoting *Strong Constr. Inc.*, ¶ 9, 255 P.3d at 907).

### DISCUSSION

1. **Did the district court err when it limited the scope of testimony and evidence it would allow for the limited remand hearing?**

[¶17] When this Court remands a case, the district court is vested with jurisdiction only to the extent conferred by this Court's opinion and mandate. *Matter of Adoption of BBC*, 849 P.2d 769, 772 (Wyo. 1993) (citing *Potter v. Gilkey*, 570 P.2d 449, 454 n.12 (Wyo. 1977)). Furthermore, as a matter of law, a lower court "must substantially comply with the combined directions, purpose, and intent of [our] opinion and mandate." *Int. of JN*, 2024

5

WY 105, ¶ 19, 556 P.3d 748, 753–54 (Wyo. 2024) (quoting *Matter of Adoption of BBC*, 849 P.2d at 772). Thus, "[i]f a cause is remanded for a specified purpose, any proceedings inconsistent therewith are error." *Matter of Adoption of BBC*, 849 P.2d at 773 (quoting *Sanders v. Gregory*, 652 P.2d 25, 26 (Wyo. 1982)); *see also Potter*, 570 P.2d at 454; and 5 Am. Jur. 2d *Appellate Review* § 687 (Westlaw May 2026 Update).

[¶18] This is commonly known as the mandate rule and is a specific application of—and an important corollary to—the law of the case doctrine. *See* 5 Am. Jur. 2d *Appellate Review* § 684; *Bay v. Anadarko E&P Onshore LLC*, 73 F.4th 1207, 1217 (10th Cir. 2023); *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 823 F. App'x 559, 565 (10th Cir. 2020). The law of the case doctrine provides a court's decision on an issue of law—including any findings of fact and conclusions of law—at one stage of a proceeding is binding in successive stages of the litigation; that doctrine has its greatest force when a case is on remand. *See Stevens v. Governing Body of Town of Saratoga*, 2025 WY 35, ¶ 37, 566 P.3d 166, 176 n.4 (Wyo. 2025) (explaining the law of the case doctrine requires a district court to adhere to its prior rulings and the rulings of an appellate court) (citation omitted); *Anesthesiology Consultants of Cheyenne, LLC v. Stevens*, 2020 WY 67, ¶ 23, 464 P.3d 584, 591 (Wyo. 2020) (citations omitted); *see also* 5 Am. Jur. 2d *Appellate Review* § 684.

[¶19] This mandate rule prevents re-litigation in the district court not only of matters this Court expressly decided but also precludes re-litigation of issues impliedly resolved by this Court. *See Anesthesiology Consultants of Cheyenne, LLC*, ¶ 23, 464 P.3d at 591 (citing *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016)); *see also* 5 Am. Jur. 2d *Appellate Review* § 684 (Westlaw May 2026 Update). Thus, a remand does not permit a litigant a proverbial "second bite at the apple." *See Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1278–79 (10th Cir. 2024) (explaining the law-of-the-case doctrine limits a litigant to one bite at the apple.); *Decker v. State ex rel. Wyo. Med. Comm'n*, 2008 WY 100, ¶ 22, 191 P.3d 105, 119 (Wyo. 2008) (noting litigant was not owed "a second bite at the apple.").

[¶20] Mr. Sorum claims the district court's remand order is void because it did not substantially comply with our remand mandate, exceeding the jurisdiction conferred upon the district court by our remand. Specifically, Mr. Sorum argues the district court failed to follow our remand instructions when it refused to let him introduce evidence. He claims he had twenty-two documents to enter into evidence, but the district court refused to allow him to do so. In making this argument, Mr. Sorum is not really claiming the district court **exceeded** the scope of the remand but rather that the court restricted the evidence Mr. Sorum was allowed to present, in violation of our remand instructions.

[¶21] To decide whether the district court violated the mandate, it is necessary to examine the mandate and the district court's actions. *See Trentadue v. United States*, 244 F. App'x 874, 876 (10th Cir. 2007) (citation omitted); *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003). Our remand "mandate" is contained within the opinion we

6

authored and published. Just like the Tenth Circuit Court of Appeals, this Court's mandate "consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." *See Procter & Gamble Co*, 317 F.3d at 1126 (citation omitted) and *Trentadue*, 244 F. App'x at 876 (citation omitted).

[¶22] In the introductory paragraph to *Sorum I*, we stated as an advance summary of our decision, "We affirm in part, reverse in part, and remand for the limited purpose of allowing Mr. Sorum to testify regarding the oral guarantee." *Sorum I*, ¶ 1, 559 P.3d at 157. In Section I(C) of our opinion, we concluded the district court abused its discretion when it prohibited Mr. Sorum from testifying about the oral guarantee, stating, "The district court should have allowed Mr. Sorum to testify on the question of the oral guarantee." *Id.*, ¶ 30, 559 P.3d at 164. And in the Conclusion, we stated:

> We affirm in part, reverse in part, and remand. The district court abused its discretion when it declined to allow Mr. Sorum to testify regarding Mr. Sikorski's allegation of an oral guarantee. We decline to consider Mr. Sorum's issues on damages as they are not yet ripe for review, given our remand. The district court did not abuse its discretion or err as a matter of law with respect to the remaining issues raised by Mr. Sorum. Remand is limited to reconsideration of the personal guarantee and providing the parties an opportunity to introduce evidence on that issue.

*Id.*, ¶ 48, 559 P.3d at 168.

[¶23] As is clear from the plain language in *Sorum I's* conclusion, our remand to the district court was limited to the personal guarantee question. *Id.* In considering all three portions of the opinion referenced above, and the circumstances the opinion embraces, it is clear we instructed the district court on limited remand to allow Mr. Sorum to testify regarding the personal guarantee. Furthermore, our language in *Sorum I's* conclusion mentioning the "opportunity to introduce evidence on that issue" necessarily refers to Mr. Sorum having the opportunity to introduce exhibits, documents, etc., relevant to the personal guarantee issue.

[¶24] A review of the record on limited remand more than sufficiently shows the district court followed our remand instructions from *Sorum I*. In two pretrial hearings prior to the limited remand hearing, the district court clearly stated its understanding that the purpose of the limited remand was for Mr. Sorum to be allowed to testify regarding the personal oral guarantee. It is undisputed the district court discussed this understanding with both parties multiple times, and Mr. Sorum agreed this was the remand's instructions and purpose.

[¶25] The record also amply demonstrates the district court did not prohibit Mr. Sorum from presenting evidence relevant to the personal oral guarantee. In the two pretrial

7

hearings, the district court clearly and plainly told Mr. Sorum that it would consider other materials he might want to offer as exhibits during his testimony, such as documents and emails, as well as "those kinds of things that somehow could be offered," as long as such offered exhibits or other "kinds of things" related to the personal oral guarantee issue. The district court also clearly clarified that it would not consider other things that were already considered and decided by this Court.[3]

[¶26]  However, apparently misunderstanding what the district court meant when it told him it would consider exhibits and "other kinds of things," as well as argument about its calculation of the damage award, Mr. Sorum informed the district court and opposing counsel of his intent to delve into many things that were outside the scope of the remand, including an alleged statute of frauds violation, claims that he was not a party to the leases, claims that Clean Crude was not defunct, and a counter-claim for damages. Mr. Sikorski filed a motion in limine to restrict Mr. Sorum's testimony to our limited remand's instructions and purpose. Just prior to the remand hearing, the district court held a hearing on the motion.

[¶27]  In its oral order, the district court reiterated that we remanded the matter to it for a limited purpose and that the court could not go beyond that clear limited purpose. The district court explained that it envisioned the sort of evidence that would be relevant to an oral guarantee included the nature of the guarantee, when it was made, how it was made, and if there was any written evidence that reflected the guarantee, such as emails or other things. It then orally pronounced its order:

> More specifically the Supreme Court addressed many of the issues that we seem to be talking about this morning; specifically the statute of frauds, all of these other things.
>
> With regard to this, then, the [c]ourt is going to order as follows:
>
> The motion in limine is granted to the extent that we are trying to delve into issues that really are not going to be related, if you will, to this oral guarantee. By that what I mean is this:
>
> If we are dealing with statute of frauds, et cetera, that really and truly you should evaluate evidence under that, I don't think that's permitted.
>
> The existence of the oral guarantee, limitations of the oral guarantee, things that people knew or didn't know, those may be relevant. I think that the [c]ourt would certainly consider those.

---

[3] At the limited remand hearing, the district court also informed Mr. Sorum that it would also consider any argument as it related to its calculation of damages in regard to the personal oral guarantee.

8

If we were dealing with things such as being advised by other folks not to do business with Mr. Sikorski because he's not trustworthy, I don't see how that particularly relates to this. Your decisions are your decisions with regard to any of this case, and that applies to both Mr. Sorum and Mr. Sikorski. The testimony what others do or don't say, I don't see how that's particularly relevant here.

With regard to being informed there's an oral guarantee, et cetera, again, I think that the testimony needs to be related more to the existence of the thing. I'm not looking for legal arguments, if you will, that's couched in terms of that.

. . . .

In terms of lack of credibility, in terms of those sorts of things, those strike the [c]ourt as legal arguments that need to be made at the appropriate time. And so certainly we are going to look forward to any arguments we have at the appropriate time. But the [c]ourt's intention this morning would be to just hear the evidence and go from there.

So to the extent that you've asked for that, Mr. [Silkorski's Counsel], I am going to grant that.

. . . .

And the [c]ourt will also be diligent, even if I have testimony or other things that are presented, I think the Supreme Court's directive in terms of the remand, the purposes of it, what is to be achieved as a result of it, is quite clear. And this [c]ourt does not feel as though it should deviate from that, nor does it feel as though it has the power to deviate from that.

So that is the [c]ourt's ruling.

[¶28] The district court's in limine order was correct in observing that it did not have the power to deviate from our limited remand instructions. Furthermore, the order was also correct in prohibiting any testimony or evidence related to matters that we had already considered and ruled on, as that was prohibited by the law of the case doctrine, as well as the mandate rule.

[¶29] Turning to the remand hearing itself, the district court gave Mr. Sorum the opportunity to present any relevant evidence he wanted to present, as long as it pertained

9

to the oral guarantee in accordance with our limited remand. When it appeared Mr. Sorum had concluded his direct testimony, the following colloquy took place:

> THE COURT: Okay. Is there anything else you want to testify to or any— anything else you want to present, I guess, in terms of evidence that we may be able to consider today?
>
> MR. SORUM: Well, it's hard to provide evidence for something that didn't exist.
>
> THE COURT: And we understand that.
>
> MR. SORUM: Okay?
>
> THE COURT: I understand your legal—your position there. So okay. The reason why I ask is if there's nothing further that you wish to present, then I'm going to turn it over to Mr. [Sikorski's Counsel] to ask cross-examination questions.
>
> . . . .
>
> THE COURT: Anything else in terms of testimony that you want to present today? And that's mainly what I want to do at this point in time is to hear from you and hear what testimony you have. If there is evidence—like I said, the email, those kinds of things, and I don't know what does or doesn't exist, and I'm certainly not advising you, but the [c]ourt is interested in hearing your side of the story.

Mr. Sorum did not try to present any other evidence, nor did he request the district court to admit any exhibits or other evidence. As such, the district court did not deny or refuse to accept any other oral guarantee evidence from Mr. Sorum. Furthermore, even had Mr. Sorum requested certain relevant evidence be allowed or admitted, the receipt of additional evidence would have been left to the discretion of the district court. *Sorum I*, ¶ 11, 559 P.3d at 160 (citing *Lyman*, ¶ 50, 524 P.3d at 759); *Belden v. Thorkildsen*, 2008 WY 145, ¶ 9, 197 P.3d 148, 151 (Wyo. 2008).

[¶30] Therefore, we conclude the district court adhered to our limited remand instructions and did not err when it limited Mr. Sorum's testimony and offered evidence to only testimony and evidence that related to the oral guarantee. Furthermore, because Mr. Sorum did not attempt to offer any evidence other than his own testimony, the district court did not refuse to allow any relevant evidence from him.

10

**2. Did the district court clearly err when it concluded Mr. Sorum made an oral guarantee to pay leases with personal funds?**

[¶31] The essential question in this appeal is whether an oral contract, referred to in this appeal as a personal oral guarantee, exists, making Mr. Sorum liable for its breach.[4] "Whether an oral contract exists, the terms and conditions of the oral contract and the intent of the parties are generally questions of fact." *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 38, 360 P.3d 1006, 1019 (Wyo. 2015) (quoting *Wilder v. Cody Country Chamber of Com.*, 868 P.2d 211, 218 (Wyo. 1994)). Thus, if there is a conflict in the evidence of the offer, the terms of the offer, and the unconditional acceptance of the offer, the interpretation of an oral contract is a question of fact. *Moncecchi v. McKellar, Tiedeken & Scoggin, LLC*, 2026 WY 50, ¶ 18, 588 P.3d 447, 453 (Wyo. 2026) (citing *Positive Progressions, LLC*, ¶ 38, 360 P.3d at 1019). However, if there is no conflict, the interpretation of the oral contract "become a question of law for the court." *Id.*

[¶32] Mr. Sikorski bears the burden of establishing the existence of the oral guarantee. *Davidson-Eaton v. Iverson*, 2022 WY 135, ¶ 42, 519 P.3d 626, 640 (Wyo. 2022) (citing *Belden*, ¶ 22, 197 P.3d at 155). The district court found that an enforceable oral contract had been formed. "We presume that finding is correct, and uphold it unless it is 'inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence.'" *Cross*, 2026 WY 75, ¶ 16, --- P.3d --- (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 13, 253 P.3d 497, 500 (Wyo. 2011)). An oral guarantee is an oral contract and, therefore, subject to the same legal principles that apply to any contract. *See Summit Constr. v. Koontz*, 2024 WY 68, ¶ 12, 550 P.3d 106, 110–11 (Wyo. 2024), and *Cross*, 2026 WY 75, ¶ 17.

[¶33] Mr. Sorum contends the district court erred when it concluded he had an oral contract with Mr. Sikorski. Mr. Sorum essentially argues there was insufficient evidence to support the district court's finding that he made a personal oral guarantee to Mr. Sikorski. Most of Mr. Sorum's contentions are based on a misunderstanding of the law. For instance, Mr. Sorum appears to not comprehend that testimony is evidence. He strenuously argues that the district court erred in finding the oral contract existed because Mr. Sikorski did not support his testimony with corroborating evidence. He contends Mr. Sikorski offered no evidence prior to remand and offered no new evidence on remand, and therefore, he argues, the district court's order on remand is not supported by **any** evidence. Mr. Sorum's arguments are not compelling.

---

[4] In *Sorum I*, we noted that "the question of Mr. Sorum's liability based on the oral guarantee is divorced from his liability as a member of Clean Crude." *Id.*, ¶ 31, 559 P.3d at 164. The personal guarantee did not modify or amend the lease agreements; it was a separate, distinct oral contract. Thus, Mr. Sorum's arguments based on the lease agreements as precluding the oral contract or personal liability are unavailing and will not be addressed.

[¶34] For an oral contract to exist, its essential terms must be defined with certainty. *Davidson-Eaton*, ¶ 44, 519 P.3d at 640 (citing *Fuger v. Wagoner*, 2020 WY 154, ¶ 11, 478 P.3d 176, 181–82 (Wyo. 2020)); *Summit Constr.*, ¶ 12, 550 P.3d 106, 110–11. Courts do not have the power to supply the terms of a contract, so an oral contract is unenforceable unless the contract terms are "so certain that the court can require the specific thing agreed upon to be done." *See Davidson-Eaton*, ¶ 44, 519 P.3d at 640 (quoting *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo. 1997)); *Summit Constr.*, ¶ 12, 550 P.3d at 110–11 (citation omitted). However, each term does not have to be spelled out in minute detail. *Cross*, 2026 WY 75, ¶ 18 (citing *Fuger*, ¶ 10, 478 P.3d at 181). The law does not favor the destruction of contracts on the ground of indefiniteness, and if it is feasible the court should construe the agreement to carry into effect the reasonable intent of the parties if that intent can be ascertained. *Id.* (citing *Fuger*, ¶ 10, 478 P.3d at 181). "Even so, 'the essentials of the contract must have been agreed upon and be ascertainable.'" *Id.* (citing *Fuger*, ¶ 10, 478 P.3d at 181). "Unless the essential terms of the agreement have been defined with certainty, no contract exists for a court to enforce." *Id.* ¶ 19 (quoting *Fowler*, 933 P.2d at 505).

[¶35] The basic elements of a contract are an offer, acceptance, and consideration. *Cross*, 2026 WY 75, ¶ 17 (citing *Kappes v. Rhodes*, 2022 WY 82, ¶ 18, 512 P.3d 31, 36 (Wyo. 2022)); *Summit Constr.*, ¶ 12, 550 P.3d at 110–11 (citation omitted). "One party makes a manifestation of assent, called an offer, to another; the latter then makes a manifestation of assent, called an acceptance, to the former." *Id.* (quoting *Kappes*, ¶ 18, 512 P.3d at 36) (citation omitted)). There must be mutual assent to the same terms—a meeting of the minds about the material terms of the agreement. *Cross*, 2026 WY 75, ¶ 17 (citation omitted); *Summit Constr.*, ¶ 12, 550 P.3d at 110–11 (citation omitted).

[¶36] Mr. Sikorski testified that in August of 2016, Mr. Sorum and Mr. Martinson met with him at his shop in Wright, Wyoming. Mr. Sorum stated that he met with Mr. Sikorski in Wyoming at least twice. During that meeting, Mr. Sorum and Mr. Martinson asked Mr. Sikorski to store their equipment they had brought with them inside his shop. In response, Mr. Sikorski expressed concern that he had not been paid for the leases. Mr. Sorum and Mr. Martinson offered up that he would be paid even if they had to pay with their own personal funds. Mr. Sikorski testified that, based upon this assurance, he agreed to store the equipment without charge and despite not yet having been paid for the leases.

[¶37] This evidence established the mutual assent to the same terms—a meeting of the minds about the material terms of the agreement. The parties agreed on the essentials of the oral contract, which were ascertainable. Mr. Sorum and Mr. Martinson offered to pay Mr. Sikorski for the leases with their own funds if they were not paid, in exchange for Mr. Sikorski putting their expensive and valuable equipment inside his shop and continuing to lease the tanks to them and providing crucial services to their operation. Mr. Sikorski accepted this offer by putting the equipment in his shop, even though he had not yet been paid. Valuable consideration consisted of Mr. Sikorski taking on the responsibility of

12

safely storing Mr. Sorum's and Mr. Martinson's valuable equipment at no charge in exchange for their promise to pay for the leases with their personal funds, which they were not previously obligated to do, in exchange for their valuable equipment being safely stored in the shop. *See Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 69, 437 P.3d 758, 784 (Wyo. 2019) (citations omitted); *Carroll v. Bergen*, 2002 WY 166, ¶ 12, 57 P.3d 1209, 1214–15 (Wyo. 2002) (citation omitted).

[¶38] To be sure, Mr. Sorum testified that the conversation with Mr. Sikorski about the personal oral guarantee did not happen and he strenuously denied making it. However, the district court found that Mr. Sorum's testimony was not credible. The credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact. *Dykes v. Hutton*, 2026 WY 78, ¶ 33, --- P.3d --- (Wyo. 2026) (citing *McAdam v. McAdam*, 2014 WY 123, ¶ 26, 335 P.3d 466, 472 (Wyo. 2014)); *see also Van Vlack v. Van Vlack*, 2024 WY 130, ¶ 52, 560 P.3d 268, 281 (Wyo. 2024). We give significant deference to the district court's firsthand assessment of witness testimony because the court is able to observe his or her demeanor during their testimony. *Id.* (citing *Matter of Est. of Soames*, 2022 WY 79, ¶ 16, 512 P.3d 629, 632 (Wyo. 2022); *Hoy v. Miller*, 2006 WY 147, ¶ 9, 146 P.3d 488, 491 (Wyo. 2006) ("[W]e do not have the benefit of how the trial judge sees and hears the witness—the pitch of the voice, facial changes, the movement in the witness—all of which may tell a separate story, to be given credence.")).

[¶39] We may not substitute our judgment for that of a trial court with respect to issues concerning credibility. *Meima v. Broemmel*, 2005 WY 87, ¶ 58, 117 P.3d 429, 448 (Wyo. 2005) (quoting *Wallop v. Wallop*, 2004 WY 46, ¶ 10, 88 P.3d 1022, 1025 (Wyo. 2004)). Furthermore, our standard of review precludes us from reweighing the evidence and giving any favorable inferences to Mr. Sorum. *Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023) (quoting *Fuger*, ¶ 8, 478 P.3d at 181). Therefore, this Court does not disturb the district court's findings concerning the credibility of witnesses. *Van Vlack*, ¶ 52, 560 P.3d at 281 (citing *McAdam*, ¶ 26, 335 P.3d at 472); *Bloedow v. Maes-Bloedow*, 2024 WY 115, ¶ 31, 558 P.3d 576, 586 (Wyo. 2024) (citation omitted).

[¶40] In the remand order's Conclusions of Law, the district court concluded:

> Defendant Sorum did not conduct cross-examination on this topic during the bench trial. More importantly for present purposes, although Defendant Sorum testified in the limited remand that he did not make an oral guarantee to Plaintiff Sikorski, the [c]ourt does not find such testimony to be credible in light of the entirety of the evidence presented. The more credible and realistic view of the evidence supports a finding that, based upon the promise, Plaintiff Sikorski allowed the tanks to be stored in his shop without charge and continued to provide tanks to the site. This oral promise was definite in its terms as it referred to equipment and services known to the parties and already in place, and it related to charges that were well known to the parties

13

that had been and continued to be incurred. Defendant Sorum and Mr. Martinson supplied guarantee of payment terms to known contract terms. That is, Defendant Sorum and Mr. Martinson would pay with their personal funds for the equipment being rented if funds were not available from Clean Crude. Accordingly, the [c]ourt continues to conclude that the damages claimed by Plaintiff are properly assessed against Defendant Sorum personally.

Viewing the evidence in the light most favorable to Mr. Sikorski we find the district court's decision is supported by the record, is not clearly erroneous, and does not give the Court a definite and firm conviction that a mistake has been committed.

[¶41] The district court found that the oral promise was clear and definite and pertained to known liabilities. The known liabilities were set out in the lease contracts and involved Clean Crude's ongoing operations that were continuously incurring expenses. Thus, the terms of the oral contract were sufficiently definite to permit the district court to determine the extent of the parties' obligations. In this regard, Mr. Sikorski satisfied his burden of establishing an oral contract existed.

[¶42] The district court did not clearly err when it found Mr. Sorum made a personal guarantee to Mr. Sikorski, amounting to an enforceable oral contract. The district court's conclusion is not inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. Mr. Sorum's failure to personally pay the leases was a breach of his oral promise to pay and, consequently, an actionable breach of the contract.

## CONCLUSION

[¶43] The district court's order after remand is affirmed in its entirety.

14